IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN MCGLOTHLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 2:17-cv-1152-LSC |
| ) | |
| NANCY BERRYHILL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.     Introduction**

The plaintiff, John McGlothlin, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB"). Mr. McGlothlin timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. McGlothlin was fifty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a college education. (Tr. at 177.) His past work experiences include employment as a researcher and an assistant

1

librarian. (*Id.*) Mr. McGlothlin claims that he became disabled on March 22, 2013, due to a torn rotator cuff, bulging disc in the lumbar spine, obesity, asthma, allergies, chronic bronchitis, depression, anxiety, edema, onset of congenital heart failure, high blood pressure, gout, and sleep apnea. (Tr. at 176.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's

impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. McGlothlin meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 23.) He further determined that Mr. McGlothlin has not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's obesity; history of chronic ear disease; edema of the lower extremities; degenerative disk disease; and s/p rotator cuff repairs are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 27.) The ALJ did not find Mr. McGlothlin's allegations to be

totally credible, and he determined that he has the following RFC: the performance of light work which allows for no right upper extremity pushing/pulling or overhead reaching; he can do only occasional stooping and crouching; he cannot do any climbing or driving; and he can have no access to unprotected heights. (*Id.*)

According to the ALJ, Mr. McGlothlin is capable of performing past relevant work as an assistant librarian and researcher as it is actually and generally performed. (Tr. at 31.) Thus, the ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (*Id.*)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Mr. McGlothlin alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he believes that the ALJ's determination of his RFC is not supported by substantial evidence. Second, Plaintiff contends that the ALJ improperly discredited his subjective complaints of pain.

### A. Determination of RFC

The RFC is the ALJ's assessment of the most a claimant can do despite his impairments based on all of the relevant medical and other evidence. *See* 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). Plaintiff quarrels with the ALJ's RFC determination in several respects.

First, he argues that the ALJ did not follow Social Security Ruling ("SSR") 96-8p, which provides that an RFC assessment must identify an individual's functional limitations and assess his work-related abilities on a function-by-function basis prior to expressing the RFC in terms of general exertional levels. *See* SSR 96-8p, 1996 WL 374184, at *3. SSR 96-8p also requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *See id.* Contrary to Plaintiff's argument, however, the ALJ properly discussed the relevant evidence in

accordance with SSR 96-8p in order to find that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b). (Tr. at 27-31).

More specifically, the ALJ discussed that on September 27, 2012, Plaintiff visited Dr. Poczatek for lower back and right lower extremity pain. (Tr. at 309.) Examination of Plaintiff's trunk as well as upper and lower extremities showed evidence of edema, functional range of motion in hips and knees, and fully functional strength with equal and normal reflexes at the patellar and Achilles tendon. (Tr. at 310.) Plaintiff was referred for an MRI to examine the lumbar spine and was instructed to increase activity as tolerated but avoid any activity aggravating his symptoms. (*Id.*) On October 5, 2012, Dr. Poczatek's review of the MRI demonstrated some bulging at the L4-5 disc, an annular tear to the exiting L4 nerve root, and no focal disc protrusion or herniation. (Tr. at 24, 304, 312.) Again, Plaintiff had no edema, functional range of motion in hips and knees, and fully functional strength of lower extremities. (Tr. at 313.) In October 2012 and January 2013, Plaintiff was given lumbar epidural block injections without complications. (Tr. at 305-08, 315.)

Then the ALJ discussed that Plaintiff visited Dr. Smith on March 13, 2013, for an examination of right shoulder pain. (Tr. at 24, 332.) Dr. Smith found that an MRI of the right shoulder showed a massive rotator cuff tear with biceps tendon

subluxation, subacromial impingement. (*Id.*) Dr. Smith scheduled Plaintiff an arthroscopy rotator cuff surgery and noted that Plaintiff could return to sedentary work until he had the surgery. (Tr. at 332.) Post-operative reports from April, May, and June 2013 indicated that Plaintiff was continuing physical therapy and making positive progress. (Tr. at 24, 329-31.) Dr. Smith indicated that Plaintiff could drive and return to light duty work in June 2013. (Tr. at 329.) Plaintiff returned to Dr. Smith after complaining of shoulder pain caused by doing activities at work that he knew he should not have done after surgery. (Tr. at 24, 328.) An MRI in August 2013 showed that Plaintiff had a recurrence of his rotator cuff tear, and he underwent a second surgery in September 2013. (Tr. at 24, 327.) Post surgery, Plaintiff was instructed by Dr. Smith that he could return to light duty work. (Tr. at 24, 322-26.)

On February 3, 2014, Plaintiff returned to Dr. Poczatek and reported that his shoulder physical therapy was limited by his back pain. (Tr. at 318.) However, during a visit 11 days later with Dr. Smith, Plaintiff did not mention back pain, and Plaintiff's sole concern was his ability to return to work with the required overhead reaching demands on his shoulder. (Tr. at 322.) Additionally, Dr. Smith noted that Plaintiff was doing well, and physical therapy indicated that Plaintiff had forward

flexion of 4+/5, abduction 4/5, external rotation 5/5, internal rotation 5/5, and 5/5 bicep. (*Id.*)

As the ALJ also discussed, Plaintiff underwent the recommended functional capacity evaluation by Charles McKie, LAT, on March, 13, 2014. (Tr. at 25, 375-78.) Mr. McKie opined that Plaintiff could lift 30 pounds floor to waist and carry 25 pounds; he may have difficulty lifting, working overhead, holding weights in a static position with the right hand and working in awkward positions; and he should avoid climbing and working from ladders or unprotected heights. (Tr. at 35, 375.) On April 1, 2014, Dr. Smith met again with Plaintiff and discussed the evaluation with Plaintiff, Plaintiff had no complaints, and Dr. Smith released him back to work at medium duty, per the functional evaluation. (Tr. at 25, 381.)

Considering that the ALJ assessed all of the aforementioned evidence in reaching his RFC determination, and that light work is defined in detail in the regulations, including how much sitting, standing, and walking is required, *see* SSR 83-10, 1983 WL 31251, at *5, the ALJ was not required to further discuss Plaintiff's ability to perform each of the exertional demands of light work. *See Castel v. Astrue*, 355 F. App'x 260, 263 (11th Cir. 2009) (rejecting the argument that the ALJ did not complete a proper function-by-function analysis in accordance with SSR 96-8p when the ALJ considered the medical evidence and the plaintiff's testimony in

arriving at the RFC); *see also, e.g., Goodrow v. Colvin*, No. 2:13-cv-672-FtM-CM, 2014 WL 3955076, at *3-4 (M.D. Fla. Aug. 13, 2014) ("Provided the ALJ considers all of the evidence, he is not required to specifically and explicitly set forth his findings on a 'function-by-function basis' concerning a claimant's functional limitations and work-related abilities."); *Davila v. Colvin*, No. 8:12-CV-2334-T-TGW, 2014 WL 495525, at *10 (M.D. Fla. Feb. 5, 2014) ("As the Eleventh Circuit has held, there is nothing in SSR 96-8p that requires the law judge to make a written assessment of each of the factors.").

Plaintiff also contends that the ALJ's RFC assessment conflicts with the opinion of Dr. Richard Harris, a physician to whom Plaintiff was referred by the Administration for a consultative examination on December 11, 2015. (Tr. at 451-56.) Plaintiff complained to Dr. Harris of back and shoulder pain and stated that he was not very active because of his size and decreased use of his shoulder. (Tr. at 451.) Upon examination, Plaintiff weighed 400 pounds and was five feet tall. (Tr. at 452.) However, Dr. Harris indicated that Plaintiff had good strength and range of motion in both shoulders, negative straight leg raises bilaterally, and full range of motion of hips, knees, and ankles. (Tr. at 451.) He noted that Plaintiff could open and close doors and pick up small objects and that he could lace and unlace shirts but not his shoes. (Tr. at 452.) Dr. Harris diagnosed Plaintiff with post shoulder

surgery. (*Id.*) Dr. Harris did note that "with [Mr. McGlothlin's] obesity and inability to move around there is a concern that he is capable in the workplace." (*Id.*) The physician also completed a Medical Source Statement in which he opined Plaintiff could occasionally lift/carry up to 20 pounds. (Tr. at 452). Dr. Harris also opined Plaintiff could sit for only ten minutes, stand for only five minutes, and walk for only five minutes at one time without interruption and the rest of the 8 hours in any given workday Plaintiff is "at home." (Tr. at 453). The ALJ gave Dr. Harris's opinion significant weight because he stated that it was consistent with his RFC determination. (Tr. at 31.) Plaintiff's argument is that because the vocational expert testified at his hearing that a hypothetical individual who had to change posture every 15 minutes would not be able to perform any sedentary, light or medium jobs (tr. at 71), and because Dr. Harris's opinion—which was given significant weight by the ALJ—was that Plaintiff would have to change posture at least every 15 minutes, then the ALJ was required to find that there would be no work that Plaintiff could maintain. Plaintiff's argument fails because an ALJ is certainly not required to adopt a medical source's opinion as his or her own. It is by now axiomatic that determining a claimant's RFC and ability to work is a task for the ALJ, and not doctors. *See Robinson v. Astrue*, 365 F. App'x 939, 999 (11th Cir. 2010) (unpublished) ("[T]he task of determining a claimant's [RFC] and ability to work

is within the province of the ALJ, not of doctors."); 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your [RFC] . . . the final responsibility for deciding these issues is reserved to the Commissioner."). Additionally, the regulations provide that an ALJ is not required to give any deference to the opinions of one-time consultative examiners, such as Dr. Harris. *See* 20 C.F.R. § 404.1502; *see also McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). There was no reversible error in the ALJ giving Dr. Harris's opinion significant weight, as Dr. Harris's opinion was generally consistent with the ALJ's RFC. In fact, the RFC in some cases was more restrictive than Dr. Harris's opinion. For instance, Dr. Harris noted that Plaintiff could occasionally reach overhead, while the RFC forbade overhead reaching in its entirety. (*Compare* tr. at 454 *with* 27.)

Plaintiff also argues that the ALJ did not consider his own testimony that when he takes his prescribed medication for bilateral lower extremity edema, Lasix, which is a diuretic, he experiences urinary frequency for several hours and has to go to the bathroom every ten to fifteen minutes. (Tr. at 45.) Plaintiff's contention is that because the vocational expert testified that a person who had to go to the bathroom every ten minutes could not hold a job (tr. at 73), then the ALJ should have found him disabled. However, the objective medical evidence does not

support Plaintiff's contention that his urinary frequency was disabling. For instance, despite having taken Lasix since September 2012, in January 2013 the only medication side effect Plaintiff reported having was dry mouth. (Tr. at 276, 290.) Although in November 2014 he reported increased urinary frequency, he was directed to only take the medication on Mondays, Wednesdays, and Fridays in order to alleviate this issue. (Tr. at 391.) As discussed in the next section, the ALJ found that Plaintiff's statements concerning the limiting effects of his symptoms were not entirely credible, a finding that encompasses his testimony about his medication side effects.

In sum, the ALJ's RFC finding is supported by substantial evidence, and Plaintiff has failed to show he consistently had any additional limitations not found by the ALJ included in his RFC finding.

### B.     Subjective Complaints of Pain

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the

objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered his medical condition as a whole." (*Id.*) (internal quotations omitted).

Mr. McGlothlin challenges the ALJ's credibility determination with regard to his subjective complaints of back pain, shoulder pain, side effects from

15

medication, and lower extremity edema. However, substantial evidence supports the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 28-30.) The objective medical evidence from several treating physicians, as discussed in the previous sections, undermines Plaintiff's subjective complaints. For instance, in terms of his back pain and edema in his lower extremities, Plaintiff demonstrated, on multiple occasions, full range of motion of hips, knees, and ankles, and medical reports from Dr. Poczatek and Dr. Crenshaw did not state that Plaintiff's back pain or edema interfered with his ability to ambulate. (Tr. at 309-20, 403, 413.)

Further, Plaintiff reported that he can prepare simple meals, do laundry, clean, drive and ride in a car, and shop for clothes and groceries. (Tr. at 29-30, 202-03.) These activities are not indicative of the severity of limitations alleged by the plaintiff. Although not dispositive, an ALJ may certainly consider a Plaintiff's self-reported daily activities in assessing a claimant's credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(4) (noting that in evaluating a claimant's subjective statements, an

ALJ may consider any conflicts between claimant's statements and rest of the evidence).

In sum, the ALJ specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for rejecting his testimony. The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and instead shows that he could perform light work.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. McGlothlin's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 18, 2018.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704